UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                  CASE NO. 6:25-cr- )14-PGB-LHP

FRANCISCO ALVAREZ

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B.

Handberg, United States Attorney for the Middle District of Florida, the United

States Department of Justice, Tax Division, and the defendant, FRANCISCO

ALVAREZ, and the attorney for the defendant, Fritz Scheller, Esq., mutually agree

as follows:

**A.    Particularized Terms**

1.    Counts Pleading To

The defendant shall enter a plea of guilty to Count One of the Information,

which charges the defendant with conspiracy to defraud the United States, in

violation of 18 U.S.C. § 371.

2.    Maximum Penalties

Count One carries a maximum sentence of five years' imprisonment, a

maximum fine of $250,000, or twice the gross gain caused by the offense, or twice

the gross loss caused by the offense, whichever is greater, a term of supervised release

of not more than three years, and a special assessment of $100. The Court shall also

Defendant's Initials  FA

order the defendant to make restitution to the Internal Revenue Service, as set forth below.

    3.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One are:

| | | |
|---|---|---|
| First: | Two or more people in some way agreed to try to accomplish a shared and unlawful plan; | |
| Second: | The defendant knew of the unlawful purpose of the plan and willfully joined it; | |
| Third: | During the conspiracy, one of the conspirators knowingly engaged in at least one overt act described in the information; and | |
| Fourth: | The overt act was knowingly committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy. | |

    4.    Restitution to Victim of Offense of Conviction

The defendant agrees that, pursuant to 18 U.S.C. § 3663(a)(3), he owes restitution to the Internal Revenue Service ("IRS") in the amount of $2,331,731.06, excluding penalties and accrued interest, for federal employment taxes due and owing for quarters ending March 31, 2018 through December 31, 2019, as set forth in the chart below:

| Shell Company | Calendar Years | Employment Tax Due and Owing |
|---|---|---|
| FAR | 2018 | $1,897,326.23 |
| FAR | 2019 | $434,404.83 |
| | Total: | $2,331,731.06 |

(a)    The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

(b)    The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this restitution-based assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment. Interest on the restitution-based assessment will accrue under 26 U.S.C. § 6601 from the last date prescribed for payment of the tax liability that is the subject of the restitution-based assessment to the date that the IRS receives full payment.

(c)    The defendant is entitled to receive credit for payments made by conspirators or the conspirator's customers against assessed civil tax liabilities due and

Defendant's Initials _FA_            3

owing for the same periods for which restitution was ordered. The defendant is also entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. The defendant understands and agrees that the plea agreement does not resolve the defendant's civil tax liabilities, that the IRS may seek additional taxes, interest and penalties from the defendant relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise the defendant's obligation to pay any remaining civil tax liability. The defendant authorizes release of information to the IRS for purposes of making the civil tax and restitution-based assessments.

(d)    The defendant understands that he is not entitled to credit with the IRS for any payment until the payment is received by the IRS.

(e)    If full payment cannot be made immediately, the defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A, *Collection Information Statement for Wage Earners and Self-Employed Individuals*, and Form 433-B, *Collection Information Statement for Businesses*, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provided to the probation office. The defendant also agrees to provide the above-described information to the probation office.

Defendant's Initials _FA_    4

(f)     The defendant agrees that this agreement, or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise the defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time periods covered by this agreement or any other time period.

(g)     The defendant agrees that, unless the Director of the Administrative Office of the United States Courts directs him otherwise, all payments made pursuant to the Court's restitution order are to be sent to the Clerk of the Court at the following address:

U.S. Courthouse
401 West Central Boulevard
Orlando, Florida 32801

(h)     With each payment to the Clerk of the Court made pursuant to the District Court's restitution order, the defendant will provide the following information:

- The defendant's name and Social Security number;
- The District Court docket number assigned to this case;
- Tax periods for which restitution has been ordered; and
- A statement that the payment is being submitted pursuant to the District Court's restitution order.

(i)     The defendant agrees to include a request that the Clerk of the Court send the information, along with the defendant's payments, to the appropriate office of the IRS. The defendant also agrees to send a notice of any payments made pursuant to

Defendant's Initials _FA_          5

this agreement, including the information listed in the previous paragraph, to the IRS at the following address:

> IRS - RACS
> Attn: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

5.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant have stipulated that the tax loss for sentencing purposes is more than $1.5 million. The United States has agreed to cap its sentencing recommendation at 37 months, and the defendant has reserved his right to argue for a downward departure or variance below the Sentencing Guidelines range determined by the Court, including a request for a non-custodial sentence. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

6.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the

Defendant's Initials  FA                    6

Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7.    <u>Cooperation – Substantial Assistance to be Considered</u>

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.  If the cooperation is completed

Defendant's Initials ＦＡ                7

prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial " in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8. <u>Use of Information – Section 1B1.8</u>

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

Defendant's Initials _FA_                    8

9.     Cooperation – Responsibilities of the Parties

a.     The government will make known to the Court and other relevant authorities the nature and extent of the defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.     It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of

Defendant's Initials ___FA___          9

the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by rescission of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)    The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)    The defendant will not be permitted to withdraw the guilty plea to the count to which defendant hereby agrees to plead in the instant case but, in that

Defendant's Initials  FH                10

event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to the count to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

**B.    Standard Terms and Conditions**

    1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or money

Defendant's Initials  F A                    11

order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Defendant's Initials _FA_                12

5.    <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third-party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

Defendant's Initials  F A                          13

6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's

Defendant's Initials  FA                    14

applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    <u>Middle District of Florida and Tax Division Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and the United States Department of Justice, Tax Division, and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained

Defendant's Initials _F̶A̶_          15

herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials  FA                16

11.    <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.    <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _____ 5th day of _____April_____, 2023.

ROGER B. HANDBERG
United States Attorney

/s/Kavitha Bondada

_____
FRANCISCO ALVAREZ
Defendant

Sean P. Beaty
Senior Litigation Counsel

_____
FRITZ SCHELLER
Attorney for Defendant

Kavitha Bondada
Trial Attorney
Tax Division

Defendant's Initials  FA                    18

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                             CASE NO.

FRANCISCO ALVAREZ

### PERSONALIZATION OF ELEMENTS

**First:**    Did two or more people in some way agree to try to accomplish a shared and unlawful plan?

**Second:**    Did you know the unlawful purpose of the plan and willfully join in it?

**Third:**    During the conspiracy, did you or one of your co-conspirators knowingly engage in at least one overt act described in the plea agreement?

**Fourth:**    Was the overt act knowingly committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy?

Defendant's Initials _FA_        19

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                CASE NO.

FRANCISCO ALVAREZ

### FACTUAL BASIS

Beginning no later than June 2017, and continuing through at least August 2020, in the Middle District of Florida and elsewhere, the defendant FRANCISCO ALVAREZ ("F. ALVAREZ"), conspired with IV, MZA, MM, MLF, EZM, ODZ, CAOG, and DA, and with other individuals both known and unknown, to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Department of the Treasury in the ascertainment, computation, assessment, and collection of revenue.

1.    Here, IV, F. ALVAREZ, and their conspirators promoted and executed a scheme to unlawfully enrich themselves and others by setting up a system through which they provided individuals – subcontractors – in the construction industry with paperwork and check cashing services.  This system impeded, impaired, obstructed, and defeated the collection of revenue by the IRS.

2.    Specifically, IV, F. ALVAREZ, and their conspirators created companies that looked like they were legitimate companies on paper.  IV, F. ALVAREZ, and their conspirators made the companies look like they had small numbers of employees, regularly filed tax returns, and paid employment taxes.  In

Defendant's Initials  FA                        20

reality, these companies were shell companies whose credentials were being used – for a fee – by subcontractors in the construction industry.  IV, F. ALVAREZ, and their conspirators thus (i) facilitated the evasion of federal employment and income taxes, (ii) facilitated the employment of undocumented workers, and (iii) helped defraud worker's compensation insurance companies.

3.    The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

4.    The IRS is the agency tasked with collecting Medicare, Social Security taxes, and federal income taxes, as provided for by the Internal Revenue Code.

5.    Section 274A of the Immigration and Nationality Act ("INA"), as amended by the Immigration Reform and Control Act of 1986, required employers to hire only United States citizens and aliens authorized to work in the United States. In general, it is unlawful for a person or other entity to hire, recruit or refer for a fee, for employment in the United States, an alien knowing this individual is an unlawful alien. Further, Section 274A of the INA stipulates it is unlawful for a person or entity, after hiring an alien for employment, to continue to employ the alien in the United States knowing the alien is (or has become) an unlawful alien with respect to such employment.

6.    Finally, if a company conducts work in the State of Florida, it must obtain workers' compensation insurance for its employees. Even if a contractor is not the direct employer of a worker, Florida law generally requires those contractors to

Defendant's Initials  F A          21

obtain evidence that a subcontractor possesses workers' compensation insurance before work begins on a project.

7.    Form 941, Employer's Quarterly Federal Tax Return, was used by employers to report their employment taxes due to the IRS on a quarterly basis.

8.    Form 940, Employer's Annual Federal Unemployment Tax Return, was used by employers to report their annual Federal Unemployment Tax Act tax.

9.    Form 1099-MISC, Miscellaneous Income, is used by a business to report payments made to non-employees in the course of the business in a given year.

10.    Form W-2, Wage and Tax Statement, is used by employers to report an employees' information, including income earned and the amount of taxes withheld from their paycheck.

11.    Form 1096, Annual Summary and Transmittal of U.S. Information Returns, was used to transmit paper Forms 1099 to the IRS.

12.    Form 1120-S, U.S. Income Tax Return for an S Corporation, was used by employers to report the income, gains, losses, deductions, credits, etc. of a domestic corporation or other entity for any tax year covered by an election to be an S corporation.

13.    Forms W-4, Employee's Withholding Certificate, were used to assist an employer in withholding the correct federal income tax from an employee's pay.

14.    F. ALVAREZ maintained a presence in and around Orlando, Florida at all times relevant to this conspiracy.

Defendant's Initials _F̶A̶_            22

## I.    OVERVIEW OF THE CONSPIRACY

15.    IV met F. ALVAREZ through his wife, DA.  DA started working for

IV in or about 2015.

16.    IV recruited F. ALVAREZ to the conspiracy.  IV told F. ALVAREZ he

could make some extra money.  IV told F. ALVAREZ he would go to a bank, get

money, and give it to people.

17.    IV had connections to the construction industry.

18.    IV recruited a number of different people to the scheme.  She would use

one shell company for a period of time, shut it down, and then open another.  These

companies purported to operate sequentially, in or about the years set forth below:

| Approximate Years | Shell Company Name | Purported Owner |
|---|---|---|
| 2017-2018 | ADD Remodeling Services, Inc. | MLF |
| 2018-2019 | FAR Remodeling Services, Inc. | F. ALVAREZ |
| 2019-2020 | EZM Remodeling Services, Inc. | EZM |

19.    Once the shell companies had opened bank accounts and obtained

worker's compensation insurance, IV and others entered into oral agreements with

individuals in the construction industry – the "crew chiefs" or "subcontractors" – to

(i) rent out the worker's compensation insurance that had been obtained, (ii) cash

checks, and (iii) provide documentation, including proof of insurance and some tax

forms, to the subcontractors so they could in turn present those documents to obtain

contracts for construction work.

Defendant's Initials _FA_          23

20.    Eventually, F. ALVAREZ and IV agreed to have F. ALVAREZ open a shell company in his name.  They agreed F. ALVAREZ would manage this shell company.

**A.    FAR Remodeling Services, Inc.**

21.    IV referred F. Alvarez to MM, the scheme accountant.

22.    MM registered FAR Remodeling Services, Inc. with the State of Florida.  F. ALVAREZ was listed as the initial officer and/or director of FAR Remodeling Services, Inc.

23.    IV caused F. Alvarez to create email addresses for FAR.  F. Alvarez set up "farremodelingserviceinc[at]outlook.com" and used this email address to effectuate the scheme, as set forth below.

24.    IV caused F. ALVAREZ to open bank accounts in FAR's name. F. ALVAREZ opened bank accounts with at least four separate banks in the name of FAR.  F. ALVAREZ used these bank accounts effectuate the scheme, as set forth below.

25.    IV caused F. Alvarez to apply for worker's compensation insurance in FAR's name.  To obtain workers' compensation insurance, an individual generally had to provide, among other things, an estimate of the number of employees the business would employ, and an estimate of the income, or "remuneration," the business expects to receive for the next policy period.  F. ALVAREZ used the same insurance company as ADD, EZM, and ODZ.

Defendant's Initials  F̲A̲                24

a.    F. ALVAREZ submitted a false worker's compensation insurance application to a worker's compensation insurance company in FAR's name: in or about May 2018, FAR did not report the number of employees it anticipated having on a workers' compensation application, but estimated its total remuneration as $260,000.  In fact, in 2018 and 2019, FAR received gross receipts of approximately $15.9 million in its bank accounts.  By claiming a small amount of estimated remuneration, F. ALVAREZ and FAR were able to avoid paying high insurance premiums.

26.    FAR operated in the conspiracy for approximately twelve months spanning 2018 and 2019.

27.    F. ALVAREZ was paid $90,000, in addition to weekly paychecks in the amount of $500, for his role in the scheme.

**B.    F. Alvarez Used FAR to Further the Conspiracy by Providing Subcontractors with False Insurance Documents that Were Issued in FAR's Name.**

28.    F. ALVAREZ "rented," or let subcontractors use, FAR's worker's compensation insurance policy for a fee.   This means that FAR provided subcontractors with certificates of insurance as proof of worker's compensation insurance coverage.

29.    F. ALVAREZ caused FAR's insurance company to send a certificate of liability insurance – proof that it had insurance coverage – to a contractor.  This certificate would state that FAR had employees working for it, and that appropriate worker's compensation insurance had been obtained.  In reality, FAR had no

Defendant's Initials  FA                25

working relationship with any of the people who would complete work on the project; the people who performed the work were associated with the subcontractor.

30.    The subcontractors who rented FAR's insurance policy had significant numbers of workers. Because the subcontractors submitted FAR's insurance policy in support of their own bids for construction work, the subcontractors were able to get jobs and avoid paying the premium that would have been due if FAR had reported the subcontractor's actual payroll to the insurance carrier.

31.    For example, on or about May 16, 2018, F. ALVAREZ caused a Certificate of Insurance to be sent to Company 1. FAR had no business relationship with Company 1, and the work for Company 1 was in fact being done by a subcontractor and its workers. The subcontractor could perform the work for the contractor because it used FAR's insurance policy to get the job.

**C.    F. Alvarez Used FAR to Further the Conspiracy by Cashing Checks in FAR's Bank Accounts and Providing Subcontractors with Cash for Payroll.**

32.    F. ALVAREZ would sometimes receive checks directly from subcontractors. He would deposit those checks into FAR's bank accounts, and then withdraw cash from those same accounts.

33.    F. ALVAREZ visited banks and withdrew cash with at least two different conspirators. F. ALVAREZ often made large cash withdrawals from multiple bank accounts in a single day.

34.    In 2018 and 2019, FAR withdrew approximately $12,181,545 in cash from its bank accounts, in approximately 192 different instances.

Defendant's Initials  FA                26

35.    F. ALVAREZ would take the cash he withdrew and give it to IV and MZA at either IV or MZA's home.

36.    After F. ALVAREZ gave IV an MZA the cash, they would count it, and portion it out into envelopes. They would write the name of the recipient on the outside of the envelope. IV and MZA would then give F. ALVAREZ the envelopes to distribute to subcontractors and/or workers.

37.    F. ALVAREZ would meet the subcontractors and/or workers in different places and give them the envelopes.

38.    By paying millions of dollars in cash to workers, F. ALVAREZ facilitated the employment of undocumented workers.

## D.    F. Alvarez Used FAR to Further the Conspiracy by Generating False Tax Documents in FAR's Name.

39.    MM provided bookkeeping and tax preparation services for FAR.

40.    MM prepared false Forms 1096 and Forms 1099 for FAR. F. ALVAREZ filed these information returns with the IRS, knowing they were false.

a.    For example, MM prepared a 2018 Form 1096 for FAR. This form documented the issuance of twenty-one Forms 1099-MISC by FAR to subcontractors totaling $12,405,321. These forms were false. F. ALVAREZ filed the false 2018 Form 1096 attaching false Forms 1099 on or about February 12, 2019.

41.    MM prepared Forms 941 for FAR.

a.    F. ALVAREZ filed two 2018 Forms 941 with the IRS. These returns reported only small amounts of taxable wages.

42.    MM would similarly prepare misleading corporate tax returns for the shell companies.  F. ALVAREZ filed these returns with the IRS, knowing they were misleading.

a.    MM prepared a 2018 Form 1120-S for FAR and caused it to be filed with the IRS.

b.    These returns were supported by false Forms 1099 and Forms 1096 F. ALVAREZ filed.

43.    By filing these false or misleading tax documents with the IRS, F. ALVAREZ hid the fact that he, IV, MZA, MM, and their conspirators were in actuality using the shell companies to pay millions of dollars in cash wages and furthered the conspiracy's efforts to defraud the IRS.

**E.    F. Alvarez Filed False Personal Income Tax Returns.**

44.    F. ALVAREZ failed to report the full amount of income he received from the scheme for the 2018 and 2019 tax years.

**II.    TAX LOSS**

45.    In total, F. ALVAREZ caused a tax loss amounting to $2,331,731, which the parties agree represents the total intended loss in this case.

Defendant's Initials  _FA_                    28